IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

JOHN M. WASSON,                                          Case No. 2:13-cv-01194-SU

       Plaintiff,

v.

UNITED STATES; ROBERT VARNER;                    FINDINGS AND
BRETT THOMAS; CHRISTINE HELBERG;                 RECOMMENDATION
JON MATYE; and KATHLEEN M.
ANDERS,

       Defendants.

_____

SULLIVAN, Magistrate Judge:

      Plaintiff John M. Wasson filed a *pro se* complaint against the United States, Robert Varner,

Brett Thomas, Christine Helberg, Jon Matye, and Kathleen M. Anders, alleging deprivation of his

Page 1 - FINDINGS AND RECOMMENDATION

property rights and violation of due process under the United States Constitution[1] and a common law

claim for conversion.[2]  Wasson's claims arise out of the impoundment of his two trailers and

personal property by United States Forest Service ("Forest Service") employees.  The United States

and individual defendants separately move for summary judgment (doc. #s 57 & 58).  For the

reasons discussed below, defendants' motions should be granted.

## BACKGROUND

Wasson is the co-holder of two unpatented placer mining claims[3] called Slippery Rocks,

located on the Wild and Scenic portion of the North Fork of the John Day River, within the Umatilla

National Forest in Grant County, Oregon.  (Compl. ¶ 2.)  Wasson uses one claim for mining (the

"Slippery Rocks mining claim") and the other claim as a mill site (the "Slippery Rocks mill site").

(John M. Wasson Dep. 14:7–15:5, Sept. 30, 2014.)  On or about September 20, 2011, Wasson sent

Christine Helberg, a  Minerals Administrator for the Forest Service, a handwritten Notice of Intent

("NOI") stating that he intended to conduct intermittent prospecting and recreational mining on the

Slippery Rocks mining claim.  (Decl. of Jon Matye Ex. 1, Dec. 4, 2014.)  On October 17, 2011,

Wasson recorded a mining claim for the Slippery Rocks mining claim with Grant County and in

---

[1] Plaintiff entitles this a "Bivens" claim referring to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[2]  The record should reflect that "Chris" Helberg is Christine Helberg and "John Mayte" is Jon Matye.

[3] "An 'unpatented' claim is a possessory interest in a particular area solely for the purpose of mining; it may be contested by the government or a private party."  *United States v. Backlund*, 689 F.3d 986, 991 (9th Cir. 2012) (citation omitted).  A patented claim results in a fee-simple interest in the claimant from the Untied States, and "no contest can be brought against the claim."  *Id.* at 991 n.3 (citation omitted).  A placer mining claim is a claim where the minerals are not located in veins or lodes within rocks but in softer ground near the earth's surface.  *Black's Law Dictionary* 1146 (10th ed. 2014).

Page 2 - FINDINGS AND RECOMMENDATION

December 2011, with the Bureau of Land Management ("BLM"). (Wasson Dep. 19:15–20:17; Matye Decl. Ex. 2.) On October 22, 2011, District Ranger Robert Varner sent a letter to Wasson acknowledging that Wasson was prospecting at the Slippery Rocks mining claim, and set forth guidelines for the prospecting activities. (Matye Decl. Ex. 3.)

On March 16, 2012, Wasson sent a revised NOI to Helberg. (Wasson Dep. 22:11–13; Matye Decl. Ex. 4.) Wasson stated he intended to operate intermittently at the Slippery Rocks mining claim from April until the weather closed operations in the fall. (Matye Decl. Ex. 4 at 1.) The revised NOI also detailed Wasson's plans for prospecting and dredging, as well as plans for revegetation and reclamation of the land, transportation and access to the claim, and disposal of human waste and work site waste. (*Id.*) On April 30, 2012, Acting District Ranger Joy Archuleta responded by letter to Wasson's revised NOI and stated that, based on the proposed activities in Wasson's revised NOI, a formal Plan of Operations ("POO") was not required at that time. (Wasson Dep. 22:14–23:23; Matye Decl. Ex. 5.) Archuleta's letter acknowledged Wasson would work the claim intermittently from April 2012 through October 2012, and that Wasson would be camping in the area for more than 14 days at a time. (*Id.*) The letter also stated that no equipment would be left on site after October 30, 2012. (*Id.*)

On November 12, 2012, Varner sent Wasson a notice of noncompliance with the requirements of 36 C.F.R. §§ 228.4(a), 228.5(a), 261.10(b), and 261.10(p). (Matye Decl. Ex. 6.) Wasson acknowledges he received the notice. (Wasson Dep. 23:24–24:5.) In the notice of noncompliance, Varner stated that Helberg conducted mining inspections on September 26, 2012 and November 1, 2012, and found that multiple activities at the Slippery Rocks mining claim exceeded those described in Wasson's revised NOI. (Wasson Dep. 24:6–11; Matye Decl. Ex. 6 at

1.)  Specifically, Varner noted: (1) Wasson had continuously occupied the site for the past five months and told Helberg he had no intention of leaving for the winter; (2) Wasson's campsite was located in the riparian area and within 100 feet of the stream edge which may result in sanitation issues; (3) Wasson's continued occupancy would have an effect on the scenic quality of the river; and (4) access to the Slippery Rocks mining claim may soon be limited due to high levels of snow in the winter and flooding in the spring, creating a potential safety hazard to Wasson and anyone who may need to assist him.  (Matye Decl. Ex. 6 at 1–2.)  As a result, Varner found Wasson's continued occupancy of the site, along with additional equipment, was considered significant under 36 C.F.R. § 228.4(4) and would require an approved POO.  (*Id.*)

Varner's notice of noncompliance informed Wasson that unless a POO was submitted and approved, he had until November 21, 2012 to winterize his operations and remove: (1) his living accommodations including two travel trailers, three tents, one camper, solar panels, and associated items; (2) a crossing rope tied across the river; and (3) non-essential mining equipment such as buckets and pans, when not prospecting on the claim.  (Wasson Dep. 24:12–15; Matye Decl. Ex. 6 at 2.)  Varner informed Wasson that his failure to remove these items would result in citation and fine under 36 C.F.R. §§ 261.10(b) and 261.10(p).  (Matye Decl. Ex. 6 at 2.)

On November 29, 2012, Varner sent Wasson a follow-up letter informing him of his right to appeal Varner's decision, as stated in his November 12, 2012 letter, within 45 days of the date of the November 29 letter.  (Matye Decl. Ex. 7 at 1.)  The latter letter provided details of what the appeal must contain and where to file the appeal; it also stated that none of the property that Varner had ordered be removed from the Slippery Rocks mining claim by November 21, 2012, had been

removed. (*Id.* Ex. 7 at 1–2.)  Varner advised that continued noncompliance may result in criminal charges after December 3, 2012.  (*Id.* Ex. 7 at 2.)

On December 6, 2012, Varner sent Wasson another letter stating none of the property which he ordered be removed from the Slippery Rocks mining claim had been moved.  (Matye Decl. Ex. 8.)  Varner ordered Wasson to cease and desist all unauthorized use and occupancy of National Forest lands and remove all property by December 16, 2012.  (*Id.*)  Varner advised Wasson that after December 16, 2012, continued occupancy and use of public lands without authorization would result in criminal charges.  (*Id.*)  Wasson acknowledges he received the letter and asserts he went to the Forest Service office on December 6, 2012 to meet with Forest Service personnel.  (Wasson Dep. 24:16–25:6.)  Wasson  told Forest Service personnel the mining laws provided him with authority to occupy the Slippery Rocks mining claim;  however, the Forest Service personnel disagreed with him.  (Wasson Dep. 25:7–9.)

On January 25, 2013, Wasson was personally served with an impound notice, signed by Varner.  (Wasson Dep. 25:10–15, 27:13–16; Matye Decl. Ex. 9 at 2.)  The notice informed Wasson that after January 25, 2013, the following property was subject to impoundment: "[t]wo travel trailers (Oregon license #s 513797 & R649859), three tents, one camper, Mercury Sable sedan (Oregon license # 641EVM), solar panels and other associated items including the river crossing rope, all buckets, pans, etc."  (Wasson Dep. 25:16–26:2; Matye Decl. Ex. 9 at 2.)  The notice informed Wasson that he could redeem the property before April 18, 2013, by contacting Law Enforcement Officer DeWayne Ross, submitting proof of ownership, paying all expenses incurred by the government in connection with impounding the property, and signing an acknowledgment of receipt of the property.  (Matye Decl. Ex. 9 at 2.)

Page 5 - FINDINGS AND RECOMMENDATION

On January 29, 2013, Wasson sent a letter to Varner where he acknowledged receipt of the impound notice and argued the impound notice did not allow him ample time to comply. (Wasson Dep. 27:17–20; Matye Decl. Ex. 10 at 1.) Wasson further stated he was actively engaged in mining operations and therefore believed he was entitled to occupy the Slippery Rocks mining claim for the duration of active mining operations. (Wasson Dep. 27:21–25; Matye Decl. Ex. 10 at 1.) Wasson claimed the actions of the Forest Service were illegal and violated his rights as a miner, as delineated by § 26 of the Mining Law of 1872. (Matye Decl. Ex. 10 at 1.) Finally, Wasson stated "[m]eanwhile, I intend to resist any attempts to impound my personal property." (*Id.* Ex. 10 at 2.)

In February 2013, Wasson filed a mining claim with the BLM for the Slippery Rocks mill site, which he had previously recorded with Grant County on December 6, 2012. (Matye Decl. Ex. 11.) The Slippery Rocks mill site is located approximately 400 yards from the Slippery Rocks mining claim. (Wasson Dep. 15:6–25.) According to Wasson, he never filed a NOI for the Slippery Rocks mill site because he did not believe he would cause significant disturbance to surface resources. (Wasson Dep. 26:3–27:6.)

On February 28, 2013, Kathleen M. Anders, an Area Mining Geologist for the Forest Service, reviewed the administrative record regarding Wasson's occupancy and use of the Slippery Rocks mining claim to determine whether occupancy and use should be managed under the Forest Service mining regulations. (Matye Decl. Ex. 15 at 1.) Anders did not visit the Slippery Rocks site, however she reviewed Wasson's NOIs and Helberg's mining inspection reports. (*Id.*) In a memorandum to Varner, Anders concluded Wasson's residence on the Slippery Rocks mining claim was not reasonably incident to mining. (Matye Decl. Ex. 15 at 3.) Anders found that based on the low level of mining activity, easy access onto the claim, and the close proximity to several towns,

occupancy is not necessary for mining any time of year and could not be approved under a POO.
(*Id.*)

On or about March 11, 2013, Wasson met with Helberg and Acting District Ranger Brett
Thomas. (Wasson Dep. 28:13–20.) During this meeting, Wasson told Helberg and Thomas he was
going to move his trailers from the Slippery Rocks mining claim to the Slippery Rocks mill site, but
had no intention of removing them. (Wasson Dep. 28:21–29:5.) Wasson explained to Helberg and
Thomas he believed the mining statutes and regulations permitted him to occupy the sites and if he
acquiesced to the Forest Service, he would be giving up his rights. (Wasson Dep. 29:6–31:12.)
According to Wasson, he ceased mining operations prior to March 15, 2013, and moved his two
trailers, which were filled with miscellaneous items, from the Slippery Rocks mining claim to the
Slippery Rocks mill site. (Wasson Dep. 31:18–23, 32:19–23.) Wasson left a few items of property
at the Slippery Rocks mining claim including buckets, screens, sluice boxes, a boat, a raft, a water
pump, and a few miscellaneous items. (Wasson Dep. 31:24–32:18, 32:24–33:2.)

Later in March 2013, the Forest Service sent Wasson a second impound notice, signed by
Thomas. (Matye Decl. Ex. 12.) On March 27, 2013, Wasson sent an email to Special Agent Jon
Matye acknowledging he received the impound notice, which was mailed to him on March 25, 2013
and had an impound date of March 27, 2013. (Matye Decl. Ex. 13 at 4.) In his email, Wasson
continued to assert his occupancy was authorized and he did not need Forest Service approval. (*Id.*
Ex. 13 at 2–4.) The second impound notice informed Wasson the following property was subject
to impoundment: "[o]ne travel trailer (Oregon license #s R513797), One trave [sic] three tents, one
camper, Mercury Sable sedan (Oregon license # 641EVM), solar panels and other associated items
including the river crossing rope, all buckets, pans, One travel trailer (Oregon license # R649859),

etc." (Matye Decl. Ex. 12.)  The notice informed Wasson that he could redeem the property within 90 days of the date of impoundment by contacting Special Agent Matye, submitting proof of ownership, paying all expenses incurred by the government in connection with impounding the property, and signing an acknowledgment of receipt of the property.  (*Id.*)

On April 1, 2013, Forest Service law enforcement impounded Wasson's two trailers and other items related to his mining activities including buckets, tubs, screens, panning pans, carpet pieces, rafts, tarp, and rope.  (Matye Decl. Ex. 14.)  According to Wasson, the trailers also contained solar panels, tents, chairs, clothing, tools, and other items.  (Wasson Dep. 44:18–45:9, 53:9–13.) Wasson testified he understood he had the right to redeem the property within 90 days.  (Wasson Dep. 34:19–35:4.)  Wasson further testified he visited the impound lot and saw his two trailers, however the Forest Service would not allow him to inspect them.  (Wasson Dep. 35:5–9; 53:25–54:2.)  Wasson alleges one of the trailers in the impound lot has a front window open, causing water damage to the inside.  (Wasson Dep. 52:17–53:5.)

Special Agent Matye also cited Wasson with violations of 36 C.F.R. § 261.10(a) (constructing or maintaining a structure on Forest System lands), § 261.10(b) (occupying Forest System lands without authorization), § 261.10(f) (placing a hazard on Forest System lands), and § 261.11(d) (failing to dispose of sewage).  *See United States v. Wasson*, 2014 WL 2093596, *5 (D. Or. May 19, 2014).[4]  On July 17 and 23, 2013, this Court conducted a criminal trial as to Wasson's citations.  *Id.*  This Court found Wasson guilty of violating § 261.10(b) and § 261.11(d), and not

---

[4]  The court takes judicial notice of the related criminal case.  *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal citations omitted) (a federal court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

guilty of violating § 261.10(a) and § 261.10(f).  *Id.* at *6.  On September 30, 2013, this Court entered a Judgment against Wasson and assessed two fines totaling $400 for the offenses, but suspended the fines on the condition that Wasson not reside on Forest Service land unless and until he had appropriate authorization from the Forest Service.  *Id.* at *7.  On May 19, 2014, District Judge Anna Brown affirmed the Judgment.  *Id.* at *12.  Wasson is currently appealing the convictions before the Ninth Circuit Court of Appeals.  *See United States v. Wasson*, No. 14-30104 (9th Cir. filed May 27, 2014).

On July 16, 2013, Wasson filed his *pro se* complaint alleging deprivation of his property rights and violation of due process under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and a common law claim for conversion.  The United States and individual defendants separately move for summary judgment arguing *Bivens* liability is not warranted in these circumstances, the individual defendants are entitled to qualified immunity, and Wasson cannot establish the elements of conversion.  Wasson responded to defendants' motions and defendants filed reply briefs.  Wasson also filed a surreply and a demand for jury trial.

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of demonstrating no genuine dispute of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All material facts are resolved in a light most favorable to the nonmoving party.  *Id*. at 331.  The court must accept all evidence and make all inferences in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Page 9 - FINDINGS AND RECOMMENDATION

*Pro se* pleadings are held to a less stringent standard than those drafted by lawyers. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972). Before dismissing a *pro se* complaint, the court must, in many circumstances, instruct the *pro se* litigant as to the deficiencies in the complaint and grant leave to amend. *Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir. 1987). Nevertheless, a *pro se* plaintiff's claims may be dismissed without leave to amend where it appears beyond doubt plaintiff can prove no set of facts that would entitle him to relief and the complaint's deficiencies cannot be cured by amendment. *Barrett v. Belleque*, 544 F.3d 1060, 1061–62 (9th Cir. 2008).

## DISCUSSION

The General Mining Act of 1872 is considered the "cornerstone of federal legislation dealing with mineral lands." *United States v. Coleman*, 390 U.S. 599, 600 n.1 (1968). The Act, as amended, is codified at 30 U.S.C. §§ 22–54. Under the Mining Act, a private citizen may enter public lands to prospect and mine for mineral deposits. 30 U.S.C. § 22. The Organic Administration Act of 1897, 16 U.S.C. § 471 ("OAA"), authorizes the Secretary of Agriculture to protect the forests from destruction and depredation. 16 U.S.C. § 551; *Public Lands for the People, Inc. v. U.S. Dep't of Agric.*, 697 F.3d 1192, 1197 (9th Cir. 2012) (citation omitted). Section 551 provides, in part:

> The Secretary of Agriculture shall make provisions for the protection against destruction by fire and depredations upon the public forests and national forests which may have been set aside or which may be hereafter set aside . . . and he may make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction . . . .

16 U.S.C. § 551.

Pursuant to the OAA, the Forest Service, a branch of the Department of Agriculture, issued regulations in 1974 governing "use of the surface" of national forest system lands in

connection with operations authorized by the Mining Act.  36 C.F.R. § 228.1.  Section 228.1

provides:

> It is the purpose of these regulations to set forth rules and procedures through which use of the surface of National Forest System lands in connection with operations authorized by the United States mining laws, 30 U.S.C. §§ 21–54, which confer a statutory right to enter upon the public lands to search for minerals, shall be conducted so as to minimize adverse environmental impacts on National Forest System surface resources.

36 C.F.R. § 228.1.  Accordingly, the Secretary of Agriculture has promulgated regulations that

control mining activities that affect surface disturbances on all national forest system lands.  36

C.F.R. §§ 228.1–228.15.  Individuals can prospect, locate, and develop mineral resources in a

national forest provided they comply with the rules and regulations promulgated by the Secretary

of Agriculture. 16 U.S.C. § 478.  The national forest lands remain subject to the Mining Act of 1872.

16 U.S.C. § 482.

I.     Plaintiff's Claims

As a preliminary matter, Wasson's 3-page complaint alleges a *Bivens* claim and a claim for

conversion, but provides minimal background as to the nature of these claims.  The court however,

is required to construe *pro se* pleadings liberally, affording a *pro se* plaintiff the "benefit of any

doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026,

1027 n.1 (9th Cir. 1985)).  On September 30, 2014, defendants deposed Wasson.  (*See* Decl. of

Kevin Danielson, Ex. 1, Dec. 4, 2014.)  Wasson's deposition testimony provides additional details

as to the nature of his claims.

A.    _Bivens_ Claim Against Individual Defendants

Wasson's second claim, a _Bivens_ claim, alleges a deprivation of property without due process of law under the United States Constitution.  (Compl. ¶ 14.)  Wasson testified at his deposition that the _Bivens_ claim is against defendants Varner, Thomas, Helberg, Matye, and Anders (collectively "individual defendants").  (Wasson Dep. 56:19–24.)  All the individual defendants are Forest Service officials.  The Court, therefore, construes Wasson's _Bivens_ claim to allege a violation of the Fifth Amendment to the United States Constitution.  _See Dusenbery v. United States_, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'")  Wasson's _Bivens_ claim also alleges "[d]efendants have violated federal statutory rights of plaintiff under statutes including by not limited to the 1872 Mining Law, 30 U.S.C. § 11 _et seq._"  (Compl. ¶ 13.)

In his surreply, Wasson for the first time alleges defendants violated the Fourth Amendment to the United States Constitution by seizing his property without a warrant.[5]  (Surreply at 1–3.)  Courts ordinarily decline to consider arguments that are first raised in a reply brief.  _Lentini v. Cal. Ctr. for the Arts, Escondido_, 370 F.3d 837, 843 n.6 (9th Cir. 2004); _see also Graves v. Arpaio_, 623 F.3d 1043, 1048 (9th Cir. 2010) (arguments raised for the first time in a reply brief are waived).  Furthermore, because Wasson raised this argument for the first time in surreply, for which he did

---

[5] Under Local Rule 7-1(f)(3), after a response and reply have been filed, no further briefing is allowed other than briefing allowed under Local Rule 56-1(b), unless directed by the court.  L.R. 7-1(f)(3).  Under Local Rule 56-1(b), "[i]f an evidentiary objection is raised by the moving party in its reply memorandum, the non-moving party may file a surreply memorandum pursuant to this subparagraph within seven days addressing only the evidentiary objection. . ." L.R. 56-1(b).  Defendants do not raise evidentiary objections in their reply briefs, nor has Wasson sought permission from the Court to file a surreply.

not seek leave of Court to file, the individual defendants were not provided with an opportunity to respond.  As such, the Court will not consider any Fourth Amendment violation by Wasson.

      B.    <u>Conversion Claim</u>

Wasson's first claim for relief alleges defendants Varner, Thomas, and Matye committed the common law tort of conversion "by confiscating plaintiff's property, or otherwise infringing upon plaintiff's rights at common law."  (Compl. ¶ 10.)  Wasson testified his conversion claim is strictly against defendant the United States and the Forest Service, because it is liable for its employees' actions.  (Wasson Dep. 55:15–21; 56:15–18.)

II.    <u>Individual Defendants</u>

The individual defendants move for summary judgment on the *Bivens* claim, arguing the court should not recognize a *Bivens* action because Wasson had an adequate remedy under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq.*  (Individual Defs.' Mot. for Summ. J. and Mem. in Supp. at 13–15.)  Alternatively, the individual defendants argue they are entitled to qualified immunity.  (*Id.* at 9–12.)

      A.    <u>*Bivens* Claim</u>

Under *Bivens*, courts may award damages against federal officials to compensate a plaintiff for violations of their federal constitutional rights.  *Bivens*, 403 U.S. at 396–97; *see also Wilkie v. Robbins*, 551 U.S. 537, 549–50 (2008).  "However, *Bivens* remedies are not available to compensate plaintiffs for all constitutional torts committed by federal officials."  *Western Ctr. for Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir. 2000).  In recent years, the Supreme Court "has focused increased scrutiny on whether Congress intended the courts to devise a new *Bivens* remedy," *Western Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1119 (9th Cir. 2009), and "in most

instances [the Supreme Court] has found a *Bivens* remedy unjustified." *Wilkie*, 551 U.S. at 550 (citing cases).

In *Wilkie v. Robbins*, the Supreme Court "distilled its 35–year history of *Bivens* jurisprudence into a two-step analysis for determining congressional intent as to the appropriateness of a *Bivens* remedy." *Western Radio*, 578 F.3d at 1120 (citing *Wilkie*, 551 U.S. at 550). First, the court must determine whether there is "any alternative, existing process" for protecting the plaintiff's interests. *Id.* (quoting *Wilkie*, 551 U.S. at 550). Such an alternative remedy would raise the inference that Congress "expected the Judiciary to stay its *Bivens* hand" and "refrain from providing a new and freestanding remedy in damages." *Id.* (quoting *Wilkie*, 550, 554). A *Bivens* remedy generally is unavailable when "'Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur' in the course of administering a federal program." *Cederquist*, 235 F.3d at 1156 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)).

Second, if the court cannot infer that Congress intended a statutory remedial scheme to take the place of a judge-made remedy, the court must next determine whether there are "factors counseling hesitation" before devising such an implied right of action. *Western Radio*, 578 F.3d at 1120 (quoting *Wilkie*, 551 U.S. at 550). "Even where Congress has given plaintiffs no damages remedy for a constitutional violation, [the Supreme Court] has declined to create a right of action under *Bivens* when doing so 'would be plainly inconsistent with Congress' authority in this field.'" *Western Radio*, 578 F.3d at 1120 (quoting *Chappell v. Wallace*, 462 U.S. 296, 304 (1983)).

The individual defendants argue the court should not recognize a *Bivens* action in this case based on *Western Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116 (9th Cir. 2009). In *Western Radio*, the plaintiff brought a *Bivens* claim against Forest Service employees alleging violations of

Page 14 - FINDINGS AND RECOMMENDATION

the First and Fifth Amendments in connection with a lease the plaintiff had with the Forest Service. *Western Radio*, 578 F.3d at 1118.  The Ninth Circuit applied *Wilkie*'s two-step analysis and noted for the first step that "*Wilkie* itself gave us a strong indication that the APA constitutes an 'alternative, existing process' for . . . damages claims based on agency actions and inactions."  *Id.* at 1122.  The court found "[t]he APA's comprehensive provisions . . . allow any person adversely affected or aggrieved by agency action to obtain judicial review thereof, so long as the decision challenged represents a final agency action for which there is no other adequate remedy in a court." *Id.* (quoting *Webster v. Doe*, 486 U.S. 592, 599 (1988)) (internal quotation marks omitted). Specifically, the APA authorizes a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to *constitutional right*, power, privilege, or immunity . . ." *Id.* (citing 5 U.S.C. § 706(2)(B)) (emphasis added).

In *Western Radio*, the Ninth Circuit found "the design of the APA raises the inference that Congress 'expected the Judiciary to stay its *Bivens* hand' and provides 'a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages,' notwithstanding the unavailability of money damages against individual officers or the right to a jury trial." *Id.* at 1123 (quoting *Wilkie*, 551 U.S. at 550, 554).  As a result, the Ninth Circuit concluded "the APA leaves no room for *Bivens* claims based on agency action or inaction"  and therefore the plaintiff could not maintain its *Bivens* claims against the individual Forest Service employees.  *Id.*

In the instant case, Wasson acknowledges he received the notice of noncompliance from Varner dated November 12, 2012.  (Wasson Dep. 23:24–24:5; Matye Decl. Ex. 6.)  The notice informed Wasson that unless a POO was submitted and approved, he had until November 21, 2012 to remove his trailers and personal property from the Slippery Rocks mining claim.  (Matye Decl.

Ex. 6 at 2.)  Varner informed Wasson that his failure to remove these items would result in citation

and fine under 36 C.F.R. § 261.10(b) and § 261.10(p).  (*Id.*)

On November 29, 2012, Varner sent a follow up letter to Wasson, via certified mail,

explaining Wasson's right to appeal, in detail:

> According to 36 CFR 228.14, if you feel that you have been aggrieved by my
> decision as the authorized officer in regards to the regulations in 36 CFR 228 subpart
> A, then you may file an appeal under the provisions of 36 CFR Part 251 subpart C,
> and it must be filed within 45 days of the decision which will start as of the date of
> this letter (36 CFR 251.88).  The information that is required to be contained in your
> notice of appeal is described in 36 CFR 251.90.  The appeal must be filed with Kevin
> Martin, Forest Supervisor, Umatilla National Forest, 72510 Coyote Road, Pendleton,
> Oregon 97801.  A copy of the 36 CFR 251, subpart C regulations is enclosed with
> this letter.[6]

(Matye Decl. Ex. 7 at 1.)  Forest Service officials later served Wasson with impound notices on

January 25, 2013 and March 25, 2013, describing the property to be impounded pursuant to 36

C.F.R. § 262.12 and advising Wasson of his right to redeem his property.  (Matye Decl. Ex. 9;

Matye Decl. Ex. 12; Matye Decl. Ex. 13 at 4.)

In response to the individual defendants' motion, Wasson states "[p]laintiff utilized the APA

procedure of filing a Form 95 Claim for Monetary and Non-Monetary Damages with the USFS.

This claim was denied leaving the Courts as the only remaining venue for resolution."  (Pl.'s

Response in Opp'n to Government's Mot. for Summ. J. at 1–2.)  The Court assumes Wasson refers

to a Standard Form 95 Claim for Damage, Injury, or Death, which is a pre-suit tort claim under 28

C.F.R. § 14.2, and which applies to claims asserted against the United States under the Federal Tort

Claims Act ("FTCA").  *See* 28 C.F.R. § 14.1.  Wasson has not provided a copy of the Standard Form

---

[6] The provisions referenced by Varner within 36 C.F.R. § 251 subpart C have since been
moved to 36 C.F.R. § 214.  *See* Postdecisional Administrative Review Process for Occupancy or
Use of National Forest System Lands and Resources, 78 Fed. Reg. 33705-01 (June 5, 2013).

95 he asserts he filed with the Forest Service, however the Court assumes he filed one with the Forest Service on an unknown date and the Forest Service denied his claim.[7]

It is undisputed that Wasson did not appeal Varner's notice of noncompliance decision pursuant to 36 C.F.R. § 228.14 as instructed, nor did Wasson exercise his right to redeem the impounded property pursuant to 36 C.F.R. § 262.12(c). Varner directed Wasson to 36 C.F.R. § 251.90, now codified as 36 C.F.R. § 214.8, providing the requirements for the contents of an appeal. (Matye Decl. Ex. 7 at 1.) Varner also advised Wasson that pursuant to 36 C.F.R. § 251.88, now codified as 36 C.F.R. § 214.9, that Wasson had 45 days from the date of the letter to file an appeal. (*Id.*) Finally, the impound notices dated January 25, 2013 and March 25, 2013, described the property to be impounded pursuant to 36 C.F.R. § 262.12, the dates the property would be impounded, and the processes and deadlines in order for Wasson to redeem the property pursuant to 36 C.F.R. § 262.12(c). (Matye Decl. Exs. 9, 12, 13).

Here the individual defendants made decisions and took actions with regard to Wasson's continued insistence on his right to keep his personal property on property regulated by the Forest Service. Wasson maintained his position that his property could remain on his mining claims long after it was authorized by an NOI. The decisions made and actions taken by the individual defendants and Wasson's continued failure to comply with regulations promulgated under 36 C.F.R. 228 and 261 resulted in the impoundment of his property. Wasson had an opportunity to appeal those decision. He chose not to do so.

---

[7] A blank copy of Standard Form 95 is available at http://www.justice.gov/civil/docs_forms/SF-95.pdf

Page 17 - FINDINGS AND RECOMMENDATION

Forest Service regulations are clear that "judicial review of a decision that is appealable under this part is premature unless the plaintiff has exhausted the administrative remedies under this part." 36 C.F.R. § 214.20; *see also Clouser v. Espy*, 42 F.3d 1522 (9th Cir. 1994) ("[t]he regulations specifically provide that it is the position of the Forest Service that, for decisions appealable under the regulations, exhaustion should be required before an aggrieved party may seek federal court review.") (citation omitted); *see also United States v. Doremus*, 888 F.2d 630, 632–33 (9th Cir. 1989) (exhaustion required in order to obtain judicial review under APA of Forest Service action on plan of operations). It is undisputed that Wasson did not exhaust his administrative remedy, nor has he sought relief under the APA.

Here, the APA provided Wasson with an adequate alternative remedy. Wasson cannot, therefore, maintain a *Bivens* claim against the individual Forest Service employees. *See Western Radio*, 578 F.3d at 1123. As such, there is no need to consider the reasons for and against the creation of a new cause of action under step-two of the *Bivens* analysis. *Occupy Eugene v. U.S. Gen. Servs. Admin.*, 2013 WL 6331013, *6 (D. Or. Dec. 3, 2013) (citing *Western Radio*, 578 F.3d at 1125). Therefore, the Court finds the APA provided Wasson with an adequate remedy and his *Bivens* claim should not be recognized.

B.    <u>Qualified Immunity</u>

The individual defendants argue even if the Court were to recognize a *Bivens* action in this case, they would nonetheless be entitled to qualified immunity because there is no evidence they violated Wasson's constitutional rights. Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982) (citations omitted). To ascertain if a government actor is entitled to qualified immunity, the court evaluates whether: (1) the alleged misconduct violated a right; and (2) that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In other words, if the government actor reasonably believed that his or her conduct complied with the law, summary judgment based on qualified immunity is appropriate. *Id.* at 244; *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

"The Due Process Clause of the Fifth Amendment forbids the federal government from depriving persons of life, liberty, or property, without due process of law." *Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1081 (9th Cir.2010) (citation omitted). Procedural due process requires "that a person deprived of property be given an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 984 (9th Cir. 1998) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Substantive due process protects an individual "against arbitrary and capricious government action, even when the decision to take that action is made through procedures that are in themselves constitutionally adequate." *Sinaloa Lake Owners Assoc. v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989). Government conduct that is an "abuse of power lacking any reasonable justification in the service of a legitimate governmental objective" gives rise to a violation of substantive due process. *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir.2008) (internal quotation marks and citations omitted).

The individual defendants argue they are entitled to qualified immunity because they were reasonably performing the duties of their job by impounding Wasson's trailers and other items from

the Slippery Rocks mining claim and mill site.  (Individual Defs.' Mot. for Summ. J. and Mem. in

Supp. at 12.)  36 C.F.R. § 262.12 provides the following:

> Automobiles or other vehicles, trailers, boats, and camping equipment and other inanimate personal property on National Forest System lands without the authorization of a Forest officer which are not removed therefrom within the prescribed period after a warning notice as provided in this regulation may be impounded by a Forest officer.  Whenever such Forest officer knows the name and address of the owner, such impoundment may be effected at any time five days after the date that written notice of the trespass is mailed by registered mail or delivered to such owner.

36 C.F.R. § 262.12(a).  If property is impounded by the Forest Service, the owner retains a right of

redemption:

> Personal property impounded under this regulation may be disposed of at the expiration of 90-days after the date of impoundment.  The owner may redeem the personal property within the 90-day period by submitting proof of ownership and paying all expenses incurred by the United States in advertising, gathering, moving, impounding, storing, and otherwise caring for the property, and also for the value of the use of the site occupied during the period of the trespass.

36 C.F.R. § 262.12(c).

Here, it is undisputed Wasson did not have authorization from the Forest Service to have

trailers or personal property at the Slippery Rocks mining claim or mill site on April 1, 2013.  Acting

District Ranger Joy Archuleta acknowledged in her April 30, 2012 letter that Wasson would be

mining at the Slippery Rocks mining claim intermittently from April 2012 through October 2012,

and that no equipment would be left on site after October 30, 2012.  (Matye Decl. Ex. 5 at 1.)  On

November 12, 2012, Varner sent Wasson a notice of noncomplaince, which informed Wasson that

unless a POO was submitted and approved, he had until November 21, 2012,  to remove his trailers

and personal property from the Slippery Rocks mining claim.  (Matye Decl. Ex. 6 at 2.)  In regards

to the Slippery Rocks mill site, Wasson testified he never filed a NOI for the mill site.  (Wasson

Page 20 - FINDINGS AND RECOMMENDATION

Dep. 26:3–27:6.)  There is no evidence the Forest Service ever authorized trailers and personal property at the Slippery Rocks mill site.

On January 25, 2013, Wasson was personally served with an impound notice, signed by Varner.  (Wasson Dep. 25:10–15, 27:13–16; Matye Decl. Ex. 9 at 2.)  The notice listed an impound date of January 25, 2013 and informed Wasson that he could redeem the property within 90 days after the date of impoundment.  (Matye Decl. Ex. 9 at 2.)  Although the Forest Service did not impound Wasson's property pursuant to the first impound notice, Wasson was mailed a second impound notice, signed by Thomas, on March 25, 2013.  (Matye Decl. Ex. 12; Matye Decl. Ex. 13 at 4.)  The second impound notice listed an impound date of March 27, 2013, and informed Wasson he could redeem his property within 90 days after the date of impoundment.  (*Id.* Ex. 12.)  On March 27, 2013, Wasson sent an email to Agent Matye acknowledging receipt of the impound notice, but asserted his occupancy was authorized and he did not need Forest Service approval.  (*Id.* Ex. 13 at 2–4.)  On April 1, 2013, the Forest Service impounded Wasson's property and it is undisputed Wasson did not exercise his right of redemption within 90 days pursuant to § 262.12(c).

The Court finds no evidence to support either a procedural or substantive due process violation.[8]  Here, Forest Service employees repeatedly asked Wasson to remove his property as it was not authorized to be on National Forest System lands.  Varner sent Wasson a notice of noncompliance on November 12, 2012, along with a follow up letter and a cease and desist letter. The letters informed Wasson he could contact Forest Service officials to discuss the letters and

---

[8] The Court also finds no violation of the Mining Act of 1872, since Wasson's property was impounded pursuant to 36 C.F.R. § 262.12, and the Secretary of Agriculture possesses authority under the OAA to promulgate rules and regulations to protect the national forest lands from destruction and depreciation.  *See Public Lands for the People*, 697 F.3d at 1197 (citation omitted); 16 U.S.C. § 551.

Wasson acknowledges he met with Forest Service personnel at the Forest Service office on multiple occasions. Although Wasson's property was impounded pursuant to the second impound notice, the first impound notice was served to Wasson on January 25, 2013, over two months prior to the actual impoundment of his property by the Forest Service on April 1, 2013, and far beyond the five days required by § 262.12(a). *See e.g. United States v. Sherpinski*, 70 F.3d 121 (9th Cir. Jan. 5, 1996) (unpublished) (finding no procedural due process violation because the Forest Service provided miner with notice of noncompliance and invitation to meet with officials at Forest Service office, Forest Service rangers visited miner several times to discuss noncompliance, and the Forest Service impounded property from mining claim more than five days after written notice). Furthermore, the Ninth Circuit has found Forest Service employees are entitled to qualified immunity for impounding property not authorized to be on a mining claim. *Walker v. Hoffman*, 583 F.2d 1073, 1074–75 (9th Cir. 1978). Therefore, the individual defendants are entitled to qualified immunity.

III.    Defendant United States

Defendant United States moves for summary judgment on the conversion claim arguing Wasson cannot establish the elements of conversion. (Def. United States' Mot. for Summ. J. and Mem. in Supp. at 8–10.)

Under the Federal Tort Claims Act ("FTCA"), the United States may be sued "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The liability of the United Sates under the FTCA is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Here, Oregon law applies.[9]

---

[9] The United States does not challenge Wasson's assertion that he submitted a notice of tort claim.

In order to state a claim for conversion, the plaintiff "must establish the intentional exercise of dominion or control over a chattel that so seriously interferes with the right of another to control it that the actor may justly be required to pay the full value of the chattel." *Mossberg v. Univ. of Or.*, 240 Or. App. 490, 494, 247 P.3d 331 (2011) (quoting *Emmert v. No Problem Harry, Inc.*, 222 Or. App. 151, 159–60, 192 P.3d 844 (2008)).  In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the courts consider the following factors: (a) the extent and duration of the actor's exercise of dominion or control; (b) the actor's intent to assert a right in fact inconsistent with the other's right of control; (c) the actor's good  faith; (d) the extent and duration of the resulting interference with the other's right of control; (e) the harm done to the chattel; and (f) the inconvenience and expense caused to the other.  *Becker v. Pac. Forest Indus., Inc.*, 229 Or. App. 112, 116, 211 P.3d 284 (2009) (citing Restatement (Second) of Torts § 222A (1965); *Mustola v. Toddy*, 253 Or. 658, 664, 456 P.2d 1004 (1969)).

Defendant United States argues the Forest Service did not commit conversion because 36 C.F.R. § 262.12 permits the Forest Service to impound property not authorized to be on National Forest System lands.  (Def. United States' Mot. for Summ. J. and Mem. in Supp. at 10.)  In response to the United States' motion, Wasson argues the impoundment of his property was unlawful because this Court previously found him not guilty of violating 36 C.F.R. § 261.10(a).  (Pl.'s Response in Opp'n to Government's Mot. for Summ. J. at 2–3.)  Although Wasson is correct that he was acquitted of constructing or maintaining a structure on Forest System lands under § 261.10(a), this Court found Wasson guilty of occupying Forest System lands without authorization under § 261.10(b).  *See Wasson*, 2014 WL 2093596 at *6.  To the extent Wasson believes a valid mining claim provides him with the right to occupy his claim year-round, this argument has been rejected

by the Ninth Circuit.  *United States v. Backlund*, 689 F.3d 986, 990 (9th Cir. 2012); *see also United States v. Backlund*, 2014 WL 5033202, *1 (9th Cir. Oct. 9, 2014).

The Court finds no reasonable trier of fact could conclude that Wasson can establish a claim for conversion.  It is undisputed Wasson did not have authority from the Forest Service to have property at either the Slippery Rocks mining claim or mill site on April 1, 2013.  There is also no evidence Forest Service officials failed to follow the procedures set forth in § 262.12(a) when impounding Wasson's property.  *C.f. Price v. City of Seattle*, 2005 WL 1528957, *2 (W.D. Wash. June 27, 2005) ("If a municipality impounds a car pursuant to a policy that has been deemed unlawful, the impound constitutes a conversion.") (citation omitted).  Furthermore, it is undisputed Wasson did not exercise his right to redeem his property within 90 days pursuant to § 262.12(c). Therefore, defendant United States motion should be granted.

## RECOMMENDATION

For the reasons set forth above, the individual defendants' motion for summary judgment (doc. #57) should be GRANTED and defendant United States' motion for summary judgment (doc. #58) should be GRANTED.  Wasson's demand for jury trial (doc. #72) should be DENIED and this case should be DISMISSED.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due by May 11, 2015.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 24th  day of April, 2015.

/s/ Patricia Sullivan
Patricia Sullivan
United States Magistrate Judge